J-S73026-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LARRY WAYNE CATHEY | : | |
| | : | |
| Appellant | : | No. 799 MDA 2019 |

Appeal from the PCRA Order Entered April 17, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0006171-2016

BEFORE:  SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:          **FILED: MARCH 3, 2020**

Larry Cathey appeals from the order, entered in the Court of Common Pleas of Dauphin County, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  After our review, we affirm.

On October 2, 2016, Cathey was charged with criminal attempt-homicide and unlawful restraint.[1]  On October 18, 2017, Cathey entered a

_____

[1] On September 30, 2016, the victim, who had a relationship with and lived with Cathey, informed Cathey she was moving to Philadelphia with her family. Cathey became enraged, attacked the victim with scissors, a kitchen knife and the claw end of a hammer, causing severe injuries.  Cathey then forced the victim to take a "massive amount of Trazodone pills[,]" at which point she lost consciousness.  The victim woke up about 24 hours later.  During the attack, Cathey threatened the victim that he was going to kill her, and that he was going to kill himself.  **See** N.T. Guilty Plea and Sentencing, 10/17/18, at 5-6.

negotiated guilty plea and the court sentenced him to 17 to 34 years' imprisonment. Cathey did not file a direct appeal.

On September 24, 2018, Cathey filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, who, following review, determined Cathey's claims were meritless. Counsel filed a no-merit letter[2] and sought withdrawal. The PCRA court, after conducting independent review, agreed with counsel's assessment. On March 11, 2019, the PCRA court filed its notice of intent to dismiss Cathey's petition pursuant to Pa.R.Crim.P. 907. On April 17, 2019, the PCRA court denied Cathey's PCRA petition and granted counsel's petition to withdraw. This *pro se* appeal followed.

Cathy raises three issues for our review:

1. Whether the PCRA court erred in finding that prior counsel was not ineffective for inducing an unlawful guilty plea under the unconstitutionality [sic] of 42 Pa.C.S.A. § 9714?

2. Whether the PCRA court erred in finding that prior counsel was not ineffective for failing to advise [Cathey] of the defense of insanity that resulted in an unlawfully induced guilty plea?

3. Whether the PCCRA court erred in finding that prior counsel was not ineffective for failing to object to the alternative sentence enunciated in 42 Pa.C.S.A. § 9782(b)(5)?

Appellant's Brief, at 3.

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. ***Commonwealth v.***

---

[2] ***See Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (en banc).

***Burkett,*** 5 A.3d 1260, 1267 (Pa. Super. 2010). This review is limited to the findings of the PCRA court and the evidence of record. ***Id.*** We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. ***Id.*** This Court may affirm a PCRA court's decision on any grounds if the record supports it. ***Id.*** Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. ***Commonwealth v. Carter***, 21 A.3d 680, 682 (Pa. Super. 2011). However, we afford no such deference to its legal conclusions. ***Commonwealth v. Paddy***, 15 A.3d 431, 442 (Pa. 2011); ***Commonwealth v. Reaves***, 923 A.2d 1119, 1124 (Pa. 2007). Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary. ***Commonwealth v. Colavita***, 993 A.2d 874, 886 (Pa. 2010).

In order to establish a claim of ineffectiveness of counsel, petitioner must demonstrate counsel's performance was deficient and he was prejudiced by that deficient performance.

> To properly plead ineffective assistance of counsel, a petitioner must plead and prove: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. If a petitioner fails to plead or meet any elements of the above-cited test, his claim must fail.

***Commonwealth v. Burkett***, 5 A.3d 1260, 1271-72 (Pa. Super. 2010) (internal citations and quotations omitted). Prejudice is established if there is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." ***Id.***

Cathey first argues counsel was ineffective for inducing a guilty plea "under the unconstitutionality of 42 Pa.C.S.A. § 9714[.]" Pursuant to section 9714, Cathey was notified that the present criminal attempt homicide charge was a third strike offense, for which a mandatory minimum of 25 years would be applicable. *See* 42 Pa.C.S.A. § 9714(a)(2).[3] *See* Appellant's Brief, at 3. He claims that since section 9714 is unconstitutional, his guilty plea was tainted and thus unlawfully induced. Cathey cites *Commonwealth v. Butler*, 760 A.2d 384 (Pa. 2000), to support this claim.

In *Butler*, our Supreme Court held that section 9714(a)(1), which imposes a mandatory sentence on a high risk dangerous offender, violates due process because it places upon the defendant the burden of rebutting the presumption that he is a high risk dangerous offender. *Id.* at 389. However, it is section 9714(a)(2), the "three strikes rule," not section 9714(a)(1), that is applicable here. By its terms, section 9714(a)(2) requires a mandatory minimum sentence of 25 years' imprisonment upon a conviction of a third crime of violence. 42 Pa.C.S.A. § 9714)(a)(2).[4] As more recently explained

---

[3] Cathey's prior convictions included a third-degree murder conviction and aggravated assault conviction; as a result, the standard range sentence for criminal attempt-homicide was 20 to 40 years' imprisonment, and for unlawful restraint, 2½ to 5 years. As part of the negotiated plea, the Commonwealth waived the 25-year mandatory minimum. *See* N.T. Guilty Plea Hearing, 10/18/17, at 2-3.

[4] Section 9714(a)(2) provides:

by our Supreme Court in ***Commonwealth v. Belak***, 825 A.2d 1252 (Pa. 2003):

> Unlike the unconstitutional section 9714(a)(1), **the plain language of section 9714(a)(2) does not impose any kind of burden of proof on the defendant, nor does it require the defendant to rebut any kind of presumption**. Rather, section 9714(a)(2) effectively places the burden on the Commonwealth to show that the offender has been convicted of three crimes of violence[.]

***Id.*** at 1256 (emphasis added; citation omitted). The ***Belak*** Court also held that section 9714(a)(2) was severable from the provision found to be unconstitutional and capable of being executed in accordance with legislative intent. ***Id.*** at 1257 "[S]ection 9741(a)(2) is not unconstitutional simply because we declared section 9714(a)(1) unconstitutional in ***Butler***." ***Id.***[5]

_____

> Where the person had **at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement**, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

42 Pa.C.S.A. § 9714(a)(2)(emphasis added).

[5] The ***Belak*** Court stated that the legislative history of section 9714 also supports the conclusion that section 9714(a)(2) is severable from section

We conclude, therefore, that Cathey's underlying claim, that his guilty plea was unlawfully induced because of the unconstitutionality of section 9714, lacks arguable merit. Plea counsel, therefore, was not ineffective.[6] **Burkett**, **supra**. **See Commonwealth v. Sneed**, 45 A.3d 1096, 1115 (Pa. 2012) ("Counsel will not be deemed ineffective for failing to raise a meritless claim.").

In his next issue, Cathey claims counsel was ineffective for failing to advise him of the insanity defense, and counsel's ineffectiveness resulted in an unintelligent, involuntary and unknowing plea.[7] Consequently, Cathey claims his guilty plea was unlawfully induced.

Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. **Commonwealth v. Timchak**, 69 A.3d 765, 769 (Pa. Super. 2013). The law does not require that the defendant be pleased with the outcome of his decision to enter a plea of

_____

9714(a)(1). "Following our decision in **Butler**, the legislature removed the invalid presumption from section 9714(a)(1), as previously noted, but it reenacted section 9714(a)(2) *verbatim*. **See** 42 Pa.C.S. § 9714 (Supp. 2002)." **Commonwealth v. Belak**, 825 A.2d 1252, 1256-57 (Pa. 2003).

[6] As counsel notes in his petition to withdraw, Cathey faced a standard range sentence of 22½ to 45 years' imprisonment for the current offenses. The negotiated sentence, 17 to 34 years' imprisonment, was less than any mitigated range for the crimes for which he was charged (criminal attempt homicide and unlawful restraint). **See** Petition to Withdraw, 1/14/19, at ¶ 20.

[7] The PCRA court notes that Cathey has a documented history of mental illness. **See** Notice Pursuant to Pa.R.Crim.P. 907, 3/12/19, at 1.

guilty. All that is required is that his decision to plead guilty be knowingly, voluntarily, and intelligently made. ***Commonwealth v. Anderson***, 995 A.2d 1184, 1192 (Pa. Super. 2010). A guilty plea colloquy must "affirmatively demonstrate the defendant understood what the plea connoted and its consequences." ***Id.*** at 1002 (quoting ***Commonwealth v. Lewis***, 708 A.2d 497, 501 (Pa. Super. 1998)).

> This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

***Commonwealth v. Eichinger***, 108 A.3d 821, 832 (Pa. 2014). "Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing." ***Commonwealth v. Bedell***, 954 A.2d 1209, 1212 (Pa. Super. 2008), (quoting ***Commonwealth v. Stork***, 737 A.2d 789, 790 (Pa. Super. 1999)).

In order to ensure a defendant understands the connotations of the plea and its consequences, Pennsylvania Rule of Criminal Procedure 590 requires the court to inquire into the following areas during the plea colloquy: "(1) the nature of the charges; (2) the factual basis of the plea; (3) the right to trial by jury; (4) the presumption of innocence; (5) the permissible range of sentences; and (6) the judge's authority to depart from any recommended

sentence." **Commonwealth v. Muhammad**, 794 A.2d 378, 383 (Pa. Super. 2002) (citation omitted); Pa.R.Crim.P. 590, comment.

Here, the record demonstrates that Cathey's plea colloquy covered each of the required areas. **See** N.T. Guilty Plea and Sentencing, 10/18/17, at 2-10. Cathey unequivocally stated that he understood all the questions being asked, and was entering his guilty plea voluntarily. **Id.** at 4. During the colloquy, plea counsel informed the court that Cathey "is in his sixties. He does have a history of mental health issues as well as substance abuse." **Id.** at 6. Further, counsel stated that Cathey had a seventh-grade education and did not read and write, however, counsel stated that he had "read and explained everything to him on the colloquy very carefully." **Id.** Only after the court was satisfied that Cathey knew all of his rights, which rights he was waiving, what sentence he faced, and was making an intelligent and voluntary decision, did it accept Cathey's negotiated guilty plea. **Id.** at 8. Further, Cathey also signed a written guilty plea colloquy, detailing, *inter alia*, the rights he waived if he pled guilty, including any possible defense. Guilty Plea Colloquy, 10/18/17, at 3. **See Muhammad**, 794 A.2d at 384 (appellant is bound by statements made during plea colloquy and may not successfully assert claims that contradict such statements).

Instantly, plea counsel obtained and reviewed Cathey's medical records in furtherance of a possible insanity defense. As PCRA counsel points out in his motion to withdraw, however, the Commonwealth could prove that Cathey's actions occurred over many hours and showed criminal intent.

Essentially, the fact of a diagnosis of mental illness does not necessarily eliminate criminal intent. As a practical matter, and as PCRA counsel accurately points out, a "not guilty by reason of insanity" verdict rarely occurs after a jury trial. *See* Hon. Bradford H. Charles, Symposium–*Lawyering for the Mentally Ill: Pennsylvania's Definitions of Insanity and Mental Illness- A Distinction with a Difference?* 12 Temple Pol. & Civ. Rts. L.Rev. 265 (Spring 2003); Petition to Withdraw, *supra* at Exhibit A. It was reasonable for plea counsel to weigh the unlikelihood of success with the common law insanity defense,[8] against the certainty of a significantly lesser sentence with a

---

[8] To establish an insanity defense, a defendant must prove "by the preponderance of the evidence that the actor was legally insane at the time of the commission of the offense." 18 Pa.C.S.A. § 315(a). "Legally insane" is defined as "at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong." 18 Pa.C.S.A. § 315(b). These definitions of the legal insanity defense, commonly known as M'Naghten's Rule, are derived from the seminal case of **Regina v. M'Naghten**, 8 Eng. Rep. 718 (1843), where the court held that

> jurors ought to be told . . . that to establish a defence on the ground of insanity, it must be clearly proved that, at the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong.

**Id.** at 722. The rule sets forth two separate aspects of the defense in Pennsylvania: a cognitive incapacity prong and a moral incapacity provision. "Where the defendant alleges that he did not know what he was doing, he is presenting a cognitive incapacity insanity defense. On the other hand, if the defendant submits that he did not understand that what he was doing was

---

negotiated plea. The balance clearly weighs in favor of recommending the plea.

We conclude, therefore, that counsel had a reasonable, strategic basis for pursuing a favorable guilty plea for Cathey, one that took into consideration the severity of the crime and Cathey's need for mental health treatment. ***Burkett***, ***supra***. Counsel, therefore, was not ineffective. ***Cf. Commonwealth v. Gainor***, 432 A.2d 1116 (Pa. Super. 1981) (no reasonable basis for counsel's failure to investigate possibility of insanity defense where evidence established defendant attacked victim, a priest, because he believed he was "possessed" by victim, exhibited "bizarre behavior" while in county jail that resulted in his being committed, had lengthy psychiatric history, and psychological report concluded his judgment was defective and he was operating at borderline psychotic level).

Finally, Cathey also claims counsel was ineffective for failing to object to the alternative sentence enunciated in section 9728(b)(5) of the Sentencing Code. He argues that is a violation of separation of powers. Section 9728, commonly known as Act 84, authorizes the county correctional facility to which a defendant has been sentenced or the Pennsylvania Department of Corrections (DOC) to make monetary deductions from an inmate's account for

---

wrong, he is advancing a moral incapacity defense." ***See Commonwealth v. Andre***, 17 A.3d 951, 959 (Pa. Super. 2011). Further, a determination of guilty beyond a reasonable doubt must be made before the burden shifts to the defendant to establish the insanity defense by a preponderance of the evidence. ***See Commonwealth v. duPont***, 730 A.2d 970, 979 (Pa. Super. 1999); ***Commonwealth v. Trill***, 543 A.2d 1106, 1127 (Pa. Super. 1988).

the purpose of collecting restitution, fees, costs and other court-ordered obligations. **See** 42 Pa.C.S.A. § 9728(b)(5). A claim challenging whether deductions can be made from one's account does not challenge the legality of a sentence and, therefore, is not cognizable under the PCRA. **See Commonwealth v. Danysh**, 833 A.2d 151 (Pa. Super. 2003); **see also** 42 Pa.C.S.A. § 9543(a)(2) (eligibility for relief). **Cf. Commonwealth v. Boyd**, 73 A.3d 1269, 1270 (Pa. Super. 2013) (en banc) (claim that sentencing court failed to consider defendant's ability to pay before imposing fines implicates legality of sentence).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/03/2020